UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

 Mykia King,

    Defendant.

Case No. 21-MJ-30178

---

### GOVERNMENT'S OPPOSITION TO DEFENDANT MYKIA KING'S AMENDED MOTION FOR RECONSIDERATION

---

The United States of America, by and through its attorneys, respectfully opposes defendant Mykia King's Amended Motion for Reconsideration of the Court Order Revoking Defendant's Bond. King cannot provide any credible assurance that any set of conditions of pretrial release will protect the community and prevent her from fleeing, nor can she show that she is likely to abide by the terms of her bond. Indeed, King's past behavior while on pretrial release shows a flagrant disregard of her bond conditions, the law, and the rights of other individuals. Given this conduct, the Court should have no confidence that King would abide by the terms of a renewed bond. Nothing the defendants have brought forth in their Motion

demonstrates a "palpable defect" in the court's earlier ruling revoking King's bond, and the Court should therefore deny the relief King seeks.

## BACKGROUND

Defendant King was charged via complaint with conspiracy to commit mail and wire fraud on April 14, 2021. The complaint alleges that King participated in a scheme to fraudulently obtain pandemic unemployment insurance benefits. The complaint further states that King submitted some $930,200 in fraudulent claims (using the names of other individuals) to the Michigan Unemployment Insurance Agency, and obtained approximately $366,000 on those claims.

On June 6, 2021, King had her initial appearance in duty court on that complaint. She was released on an unsecured bond, with conditions. Those conditions included that King not violate any federal, state, or local laws while on release, and that she not possess the personally identifying information (PII) of any other person. *See Order Setting Conditions of Release,* Dkt No. 5.

On August 9, 2021, Pretrial Services Officer Gwendolyn Stein submitted a Petition for Action on Conditions of Pretrial Release. The Petition noted several violations that King had accrued during her approximately two months on bond, including an alleged arrest in West Bloomfield (which King failed to report and affirmatively denied when questioned), and an arrest on August 7 by the Farmington Hills Police Department in which King was found in possession of several credit

cards and gift cards not in her name. The Court scheduled a hearing on the bond revocation request for August 17, 2021.

At that hearing, the government proffered the police report detailing King's arrest in Farmington Hills on August 7, 2021. Of particular note were the following facts regarding that arrest:

- Officers observed King and another individual picking various documents up out of the median of Twelve Mile Road. Upon realizing they were being observed, King and her passenger got into a white Mercedes and left the scene. Finding this rather suspicious, the police initiated a traffic stop on the vehicle. King, the driver, admitted the vehicle was uninsured. Moreover, the officers noted that King had numerous outstanding warrants for traffic offenses and arrested her. Her passenger likewise had a suspended license, so the vehicle was impounded and an inventory search conducted.
- In that inventory search, officers found six credit/debit cards in King's purse in the names of other individuals, all bearing typically female names.
- A Michigan driver's license bearing King's picture but a different name ("T.L") was also found in King's purse.

- A notebook containing numerous pages filled with names, dates of birth, bank account information, and other PII was found in the trunk of the vehicle. PII belonging to T.L. was found in the notebook. In addition, the notebook contained PII belonging to each of the individuals whose names were found on the credit/debit cards in King's purse.

- The Farmington Hills police contacted one of the individuals whose name was used to obtain one of the debit cards found in King's purse. The individual confirmed her PII, advised the police that she did not know King, and made clear that she had not authorized King or anyone else to use her PII to obtain a debit card.

- Unemployment Insurance mailings from California in the name of another individual (not King or her passenger) were located in the vehicle's glove box.

- King denied any knowledge of the cards in her purse or the notebook.

The Court ordered King detained following the hearing, and issued an order to that effect the following day (August 18, 2021). The Court found both that "there is no condition or combination of conditions of release that will assure that

Defendant will not flee or pose a danger to the safety of any other person or the community," and that "Defendant is unlikely to abide by any condition or combination of conditions of release." *See Order Revoking Bond as to Mykia King*, Dkt. 19.

King filed a Motion for Reconsideration on August 23, arguing that there were conditions that could assure the safety of the community. Specifically, King asked that the court place her on 24-hour house arrest and release her to live with her father, his fiancée, and two children. King later amended her Motion to offer her grandmother's residence as another possible location for her house arrest. Defendant's amended motion states that both her father and her grandmother are open to unannounced searches of their respective homes by pretrial services. Her father, his fiancée, and King's grandmother have also agreed to consent to "put restrictions" on their electronic devices to prevent King from using them.

## ARGUMENT

The government respectfully opposes this Motion for Reconsideration. King fails to provide a sufficient basis to satisfy either prong of the relevant statutory test under 18 U.S.C. § 3148(b)(2), when she must meet <u>both</u> for the court to grant her a bond. Because of this, King has shown no "palpable defect" in the Court's prior ruling, which is required for a Motion for Reconsideration to be successful pursuant to L.R. 7.1(h)(3). King's motion should therefore be denied.

Pursuant to 18 U.S.C. § 3148, the Court "shall enter an order of revocation and detention" if, after finding a defendant has committed a new crime or otherwise violated his or her bond conditions, it finds:

> (A) Based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions that will assure the person will not flee or pose a danger to any other person or the community; **or**
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b)(2) (emphasis added).

The government maintains that King cannot meet the requirements of either of these two provisions, when she in fact must meet both to obtain a bond in this matter.

Starting with subsection (A) of 18 U.S.C. § 3148(b)(2), it is true that house arrest, restrictions on the use of family members' electronic devices (or possession of such devices on her own), and unannounced pretrial services visits are strict conditions that reduce the danger of King absconding or continuing her criminal activity. However, given King's past behavior, can the Court have any "assurance" that she will not do so? King was charged with participating in a widespread scheme to steal unemployment insurance benefits, specifically by using the names of others to apply for and obtain pandemic-related unemployment benefits to which she was not entitled. She was placed on bond for that offense and a condition of her pretrial release was that she not possess the PII of other

individuals. She was arrested two months later in possession of six fraudulently obtained debit/cards cards, a fake ID, and a notebook containing the PII of numerous people, including those in whose names were found on the cards and the ID. Releasing a defendant on bond requires a degree of trust – specifically, trust that a defendant will take the bond conditions seriously and will try to abide by them, even if motivated purely by self-preservation. Strict conditions are doubtless an inconvenience, but not a true barrier to those fundamentally committed to evading them and continuing to engage in criminal conduct. King's past behavior has demonstrated that her commitment to refrain from criminal behavior while on bond is dubious, to say the least. The government submits that King's conduct while on pretrial release should give the Court no confidence that she will not abscond or otherwise pose a threat to the community's well-being while on bond in this matter.

The government does not possess any derogatory information about any of the individuals who, under King's proposal, would provide a residence for King while she is on house arrest in this matter (other than Mr. King's dated drug conviction, which King notes in her motion). However, these are family members, not corrections officers. Ensuring that King does not continue to engage in criminal activity is likely beyond the capacity of these individuals. While King herself will be on house arrest, her family members doubtless have obligations during the day

and will not be with her and observing her behavior on an around-the-clock basis. King's criminal behavior, which involves the use of purloined PII to commit various sorts of fraud, is something that can be done from the comfort of one's own bedroom so long as one has access to the internet. House arrest is simply no barrier to crime of this sort. While her bond conditions will preclude her from using electronic devices, it is hardly a heavy lift to obtain access to one and use it surreptitiously. Policing this kind of thing is much better left to King's jailers, as opposed to her family members and the occasional visit from pretrial services.

King likewise cannot prevail under the second prong of Section 3148(b)(2). King has proven herself highly unlikely to abide by any conditions of supervised release. The government again cites her behavior when placed on bond following her initial appearance on the underlying complaint. King's violations were not technical or minor ones. This is not the sort of behavior that can be appropriately addressed with a stern warning or the like. It hardly takes a great inferential leap to conclude that King was actively engaged in additional criminal conduct at the time of her arrest. She possessed a notebook full of PII, fraudulent credit and debit cards using that PII, and a fake ID also using that PII. King is not an individual who took her bond conditions seriously when they were imposed two and a half months ago. Other than the fact that she has been apprehended, nothing has changed. Had police not spotted King picking up loose papers in the median of Twelve Mile –

8

papers that had apparently blown out of her open car window – King would doubtless still be committing crimes. The best evidence we have of King's future conduct is her past conduct, and that past conduct gives us no reason whatsoever to believe that King would abide by any condition of bond this Court could impose.

Following the detention hearing in this case, the Court found against King on both prongs of the Section 3148(b)(2) test discussed above. King's motion is therefore a "Motion for Reconsideration," and as such, has to meet a high standard. According to Eastern District of Michigan Local Rule 7.1(h)(3), in order to prevail on a Motion for Reconsideration, "The movant must not only demonstrate a palpable defect by which the Court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." King cannot meet that high standard here. Her newly proposed bond conditions, while undoubtedly stringent, do not "assure the person will not flee or pose a danger to the safety of any other person or the community" for the reasons set forth above. Nor should those conditions give the Court any confidence that King will "abide by any condition or combination of conditions of release." For these reasons, there was no palpable defect in the Court's order revoking bond in this case, and King's Motion for Reconsideration should be denied.

# CONCLUSION

For the reasons set forth above, King's Motion for Reconsideration should be denied.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

| *s/ John K. Neal* | *s/Alyse Wu* |
|---|---|
| John K. Neal | Alyse Wu |
| Assistant United States Attorney | Assistant United States Attorney |
| 211 W. Fort Street, Suite 2001 | 211 W. Fort Street, Suite 2001 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 226-9644 | (313) 226-9589 |
| Attorney for the United States | Attorney for the United States |

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 10, 2021, I caused a copy of this document to be filed using the Court's ECF System, which will provide access to this document for all counsel of record.

S/ John K. Neal